Wachtler, J.
(dissenting). I disagree with the majority’s conclusion that the legality of the search and seizure, as an incident to the defendant’s arrest, is not reviewable in this court. I also believe that the People did not meet their burden of proving that their actions were justified by exigency or any exception to the warrant requirement. Consequently, the evidence seized is inadmissible and the judgment of conviction should be reversed.
The real evidence against the defendant was seized on two occasions in October, 1975, by members of an anticrime team of the New York Police Department assigned to the 123rd Precinct in Staten Island. Following denial of his motion to suppress the defendant pleaded guilty to felony possession of a weapon. The Appellate Division affirmed, without opinion.
The facts adduced at the pretrial hearing establish that the initial search and seizure of October 13, 1975 was unlawful in that it was warrantless and without any constitutionally cognizable justification. On that date, Theresa Long, a 16 year old, entered the police station shortly after noon and requested to be assisted in her return to a drug rehabilitation center in New Jersey. Miss Long who was not known to the police, had track marks on her arms and admitted using drugs. She claimed that she had been living with the defendant on a barge which was moored in the Arthur Kill, Staten Island. She disclosed that she had sexual relations with the *1033 defendant and that Martin had drugs and guns on the barge. The girl’s parents were summoned to the precinct and, after being apprised of their daughter’s statements, were asked whether they wanted to press charges. They responded affirmatively and five police officers were dispatched to the defendant’s residence. Approximately three hours elapsed from the time Miss Long entered the precinct and the police officers arrived at the barge.
Although there was no reason for concern about flight, destruction of evidence or public safety, the police ignored the warrant requirement and proceeded directly to Martin’s home. The leader of the "anti-crime team” knocked on the door and when Martin responded, the detective announced that they were police officers and ordered him to stick his hands out of the door. Martin obeyed and was immediately placed under arrest. The police then directed him back into the barge at gunpoint. Martin who was wearing only undershorts was permitted to put on his clothes which were on a nearby chair and was then handcuffed. These events took about seven minutes; nevertheless, the police officers remained inside the barge for almost an hour.
During this period various items were seized. The testimony established that one of the officers found a .22 caliber derringer in an open drawer in the night table next to defendant’s bed. Another member of the police team seized a revolver from a chair. Two hypodermic syringes and cotton balls were also taken. When the officers were finished they obtained the keys from Martin and locked the barge, placing it under guard until a search warrant could be obtained.
The next day a search warrant was issued authorizing the seizure of additional handguns, narcotics and pornographic material. The warrant was based on the observations made during the arrest and additional information from Miss Long after the officers had reported the results of the afternoon’s search. This second search yielded 12 handguns, a large quantity of drug paraphernalia, amphetamines and still and video tape pictures of the defendant and complainant committing various sexual acts. The validity of the second search based as it was on the information gleaned during the first search, hinges on the validity of the initial search and seizure of October 13, 1975.
Before analyzing that warrantless search and seizure I must digress briefly to resolve the issue of preservation for appellate *1034 review. I disagree with the majority that there is an impediment to our consideration of the legality of these searches and seizures. Although the defendant failed to challenge the warrantless arrest in his home, he did move to suppress the physical evidence prior to trial. The suggestion that we are jurisdictionally barred from reaching this issue because Martin’s counsel did not attack the arrest reflects a misapprehension of the principle of preservation.
For a matter to be considered by the court, it must be raised at a time when the People have an evidentiary opportunity to counter the assertion (People v Tutt, 38 NY2d 1011). I am unable to perceive the possibility of any. change in the People’s proof by virtue of a challenge to the arrest. Here, the motion to suppress physical evidence raised the only issue capable of providing the defendant with a remedy. The exclusionary rule does not apply to the custody of the defendant. A determination that an arrest was unlawful does not result in release of the defendant (cf. United States v Crews, 445 US 463), rather, the illegality of an arrest is significant only to the extent that it triggers the exclusionary rule with respect to statements or physical evidence obtained at the time of the arrest. The manner in which the parties and the courts below addressed the suppression motion is sufficient to warrant consideration by this court.
Since the instant record is devoid of exigent circumstances we consider whether or not the search and seizure was proper as incident to a lawful arrest or under the plain view doctrine.
The Supreme Court has recently declared that warrantless arrests on private premises are unconstitutional (Payton v New York, 445 US 573). Although this defendant’s arrest preceded Payton (supra) I am not prepared to legitimatize the seizures which flowed from Martin’s arrest on that basis. It has been 20 years since the exclusionary rule was held applicable to remedy unlawful State police action. There simply was no excuse for the officers to proceed without either an arrest or search warrant to Steve Martin’s home. Considering the clarity of the constitutional protection and the severity of the exclusion sanction on the government and society as a whole, refusal to adhere to the warrant requirement seems inexcusable. Surely, the burden of securing a warrant is greatly outweighed by the strain on all levels of our criminal justice system which comes from continuously reviewing warrantless police action.
*1035 The trial court adopted the position that the October 13 search was justified on the grounds that the evidence seized was in plain view. I do not agree.
The plain view doctrine requires: (1) lawful presence, (2) inadvertence, and (3) incriminatory nature must be apparent from its outward appearance (Coolidge v New Hampshire, 403 US 443; People v Spinelli, 35 NY2d 77). Not only was the police presence here not lawful, the record establishes conclusively that the discovery of the items seized was anything but inadvertent. The informant had specifically and repeatedly told the police before they left the precinct that guns and drugs were located on Martin’s barge. This was clearly a planned warrantless search which must be condemned.
Moreover, as we noted in People v De Bour (40 NY2d 210), the police perform many and varied tasks in our society, and the measure of reasonableness will be a function of the type of task they are performing. Consequently, a more exacting standard will be applied to the actions of those officers assigned expressly to anticrime duties. The officers in the present case were clearly engaged in the "competitive enterprise” of enforcing the criminal law and the manner in which they gather evidence must withstand the strictest scrutiny.
Where, as here, the discovery of evidence or contraband is anticipated the principle of plain view may not be asserted to enable the government to circumvent constitutional safeguards (People v Spinelli, supra, at p 81). Planned warrantless searches are the antithesis of constitutional action and should not be countenanced in our system of justice.
Thus, in my view, the judgment appealed from should be reversed and the case remitted for trial.
Chief Judge Cooke and Judges Jasen, Gabrielli and Jones concur in memorandum; Judge Meyer concurs in result on the basis of the last paragraph of the majority memorandum; Judge Wachtler dissents and votes to reverse in an opinion in which Judge Fuchsberg concurs.
Order affirmed.